PHILLIPS *v.* HARDY.

Opinion delivered June 4, 1928.

*Owens & Ehrman,* for appellant.

*J. S. McKnight* and *Thomas W. H. Hardy,* for appellee.

WOOD, J. This action was instituted by Frank Phillips against Louis Tatum and Pearl Tatum to foreclose two mortgages on certain lands situated in Calhoun County, Arkansas. The plaintiff alleged that the mortgages were executed to secure certain notes, one for $175, executed in favor of the Camden National Bank, which note and mortgage the plaintiff had purchased from the bank, and also another note in the sum of $560.95, secured by a mortgage executed by Louis and Pearl Tatum to the plaintiff. The plaintiff alleged that both notes were due, also that the defendants were indebted to the plaintiff in the sum of $1,375.62 on account, which was secured by a second mortgage. The notes and mortgages were made exhibits to the complaint. Service was had upon the Tatums, but they failed to appear, and a decree was entered against them by default in the sum of $1,375.62, and the land described in the complaint and mortgages was ordered sold to satisfy the decree. The land was sold under the decree, and the commissioner appointed to make the sale made his report to the court in May, 1926.

Thomas W. Hardy, trustee for Gathright Livingston, who was the guardian of Girtha Lee Livingston and

Mary Lee Livingston, minors, and also as the next friend of these minors, filed a petition for intervention and a motion to postpone confirmation of the sale. In their petition it was alleged that Gathright Livingston, the guardian of the two minors, had, on November 24, 1922, been authorized by the probate court to loan Louis Tatum $2,000, which had been done; that the loan was evidenced by a note secured by a deed of trust on the lands in controversy, which had been duly recorded; that the First National Bank of Camden and Frank Phillips, the plaintiff in the foreclosure suits, had full knowledge of this prior deed of trust; that Phillips and Louis Tatum entered into a conspiracy whereby they represented that the money due Livingston as guardian had been paid, and induced him to enter satisfaction of the mortgage on the record; that Phillips knew that the indebtedness due by Louis Tatum to Livingston as guardian had not been paid, but was past due under the terms of the mortgage securing the same; that Phillips knew these facts at the time he purchased the note from the First National Bank of Camden, and also at the time he took the note and mortgage to evidence and secure the indebtedness due him by the Tatums.

Hardy, as the trustee for Livingston, the guardian, and as next friend of the minors, alleged that they were damaged in the sum of $1,000 by reason of the acts of the plaintiff and the Tatums in thus clouding their title. The prayer of the complaint was that their own mortgage be foreclosed on the land involved as prior to the mortgage of the plaintiff, Phillips. Attached to the petition of intervention were a deed of trust, letters of guardianship, a copy of the order of the probate court authorizing the loan by Livingston, the guardian, and a copy of the note to the bank. Service was had upon the plaintiff, Phillips, and upon Joe Bradshaw, the trustee named in the mortgage of the Tatums to Phillips. The defendants, Louis and Pearl Tatum, waived service, and entered their appearance to the intervention. Phillips, the plaintiff in the original action, answered the inter-

vention, denying its allegations, and alleged that Livingston, the guardian, on April 29, 1925, had satisfied of record the mortgage executed by the Tatums to Gathright Livingston, as guardian, and alleged that the debts secured by that mortgage had been paid.

An amendment to the exceptions to the report of the commissioner was made for the minors, in which they alleged that the satisfaction of the mortgage to their guardian, Gathright Livingston, had been fraudulently obtained by the plaintiff in the original action; that they had no knowledge of the prior foreclosure proceedings, and that they had made known and asserted their rights immediately after learning thereof. They asked that the satisfaction of the record of the mortgage made to their guardian, Gathright Livingston, be canceled, and that such mortgage be foreclosed.

Under an agreement by counsel representing respective parties, all documents and records referred to in the pleadings were introduced as evidence in the cause. It was shown on behalf of the minors that a note for $2,000 executed by the Tatums to Gathright Livingston, their guardian, was left in the Merchants' & Planters' Bank of Camden for safekeeping. The note had never been paid through the bank. Thomas W. Hardy testified for the minors that, in the fall of 1922, Gathright Livingston, as guardian of his two minor children, Girtha Lee and Mary Lee, had in his possession $2,000 belonging to them. Livingston was authorized by an order of the probate court to loan this money to the Tatums, to be secured by a deed of trust on the lands described in the pleadings and the deed of trust. Witness was named as trustee in the deed of trust executed to secure the loan. The note evidencing the loan for $2,000 had never been paid, so far as witness knew. Witness informed Frank Phillips, at the time the note was executed and the mortgage was taken covering the same land, that Gathright Livingston had a mortgage on the land and the indebtedness to Livingston had not been paid. Witness did not remember the exact date, but did remember

telling Phillips that the land belonged to these little negroes, and that if he took a mortgage on it he would lose it; that he could not get anything out of it until the $2,000 was paid.

Lee York testified that he sold the land in controversy to Louis Tatum. The proceeds of the loan made by Gathright Livingston, as guardian, to Tatum were paid direct to witness. Witness had a conversation with Phillips, in which Phillips stated that he had settled all the indebtedness owed by Louis Tatum. He did not say what indebtedness. Witness talked to Phillips several times about this mortgage prior to April, 1925, and Phillips understood that the Livingston children had a lien on the land in controversy. Witness told him that they had a mortgage on this land to secure the sum of $2,000. At the time witness so informed Phillips, Phillips was furnishing Tatum and the Livingstons. The conversation referred to took place in the spring of 1925.

Gathright Livingston testified that he was the father of the minors, Girtha Lee and Mary Lee Livingston. He was their guardian. Witness could read and write. He identifies what purported to be the note given by Louis and Pearl Tatum, November, 1922. The mortgage was given to secure the note. The note had never been paid. On April 29, 1925, witness entered a satisfaction of record on the records of Calhoun County, where the mortgage referred to had been recorded. Witness was asked why he entered the satisfaction on the record, and stated, in substance, that he did so because Phillips told him to do so; that Phillips said he had paid all the indebtedness that Louis Tatum owed; Phillips said they could send witness to the penitentiary; that the record should have been satisfied ten days earlier. Phillips stated that he had paid what Louis Tatum owed to the Merchants' & Planters' Bank at Camden. Witness further testified that he and Tatum, in 1923, gave Phillips a joint mortgage on their mules and crops. Witness denied that he had ever told Phillips that the mortgage of the Tatums to witness for the children had been paid. He

stated that Phillips told him that he had paid out the indebtedness of Tatum on the place, and if witness did not satisfy the record he, Phillips, was going to send witness to the penitentiary. In 1925 witness was living on the children's place, and that year Phillips furnished witness fertilizer to use on the place. The note of the Tatums to Gathright Livingston was due November 24, 1927.

Frank Phillips, the plaintiff in the original action, testified that he was engaged in the mercantile business at Camden, Arkansas; that he was in the clerk's office in Hampton when Gathright Livingston satisfied the mortgage given to him by the Tatums. Witness did not state to Gathright Livingston that witness had paid the indebtedness of the Tatums to the children; that he had paid to the Merchants' & Planters' Bank at Camden the indebtedness due by Louis Tatum and wife to the Livingston children. Witness took a mortgage in the year 1923-24 on Gathright Livingston's mules and crops. Livingston did not pay anything—claimed that his cotton was burned. Witness found out that Livingston had sold cotton in Hampton and in Camden. Witness advised Livingston that he'd have to have his money or foreclose his mortgage. Louis Tatum suggested to witness that he take a mortgage on the land to secure the Livingston indebtedness and $175 which Tatum owed the bank. Witness refused to do so until furnished with an abstract. Witness went to the bank to see about paying off the $175 which Tatum owed the bank, and was informed that there was a mortgage on the land to Livingston for $2,000. Tatum and Livingston stated to witness that they wanted to secure him, pay the bank, and secure furnishings for that year. Livingston had not, prior to that time, told witness about the $2,000 indebtedness. When witness asked Livingston about it, Livingston told him that the Tatums did not owe him anything, and that he, Livingston, would satisfy the mortgage. Witness did not threaten or intimidate Livingston in any way to satisfy the mortgage, but

Livingston satisfied the mortgage in order to get witness to advance money to pay the bank to secure the indebtedness which was past due and to get six or seven hundred dollars' worth of supplies for the ensuing year; that Tatum notified witness that the indebtedness had been paid. After witness' mortgage on the land was taken, both Tatum and Livingston told him that the indebtedness to the children had been paid and that everything was cleared. Livingston was living on the land in question in 1924, and most of the money furnished by witness on the mortgage went to Livingston. Witness did not know that there was any other lien on the land except that of the bank. Livingston furnished him an abstract which showed upon its face that the property was clear. Witness could not testify from his own knowledge that the $2,000 due the children had been paid. Witness further testified, in regard to the satisfaction of the mortgage, that he told Tatum and Livingston that, if they wanted him to furnish them, the mortgage to Gathright Livingston would have to be satisfied. The mortgage of the Tatums to the bank was acquired by the witness in November, 1924, and on the same day the Tatums executed the mortgage on the lands to witness. Witness told Tatum and Gathright Livingston that the mortgage given by the Tatums to the bank would have to be satisfied before witness would furnish them anything. Gathright Livingston did not tell witness at the time that he had a mortgage on the land. He said there was nothing against it. Witness told Livingston that he was not going to pay the bank until he had satisfied his mortgage. Livingston met witness on the Locust Bayou road, and came and satisfied the mortgage. Witness did not use any coercion or threats to have Livingston satisfy the mortgage. Witness did not furnish a nickel's worth of supplies to Livingston and Tatum until witness knew that the mortgage to the children had been satisfied.

Several witnesses testified to the effect that Gathright Livingston's reputation for truth and honesty in the

community where he lived was bad. There was testimony to show that the Livingstons and the Tatums were negroes, and were associated together in making crops on the lands in controversy. Phillips was a white man.

Upon the above record the court entered a decree refusing to confirm the sale made under the original decree in favor of Phillips, and entered a decree in favor of the interveners, Thomas W. Hardy as next friend and Gathright Livingston as guardian of the minors, Girtha Lee and Mary Lee Livingston, against Louis and Pearl Tatum, in the sum of $2,774, principal and interest, and declaring the same a first lien on the land in controversy, and superior to the lien of the plaintiff on such land. From that decree is this appeal.

The above record shows that the deed of trust from the Tatums to Thomas W. Hardy, trustee in the deed of trust to Gathright Livingston for his minor children, was filed for record December 1, 1922. This deed of trust was unsatisfied of record when the Tatums executed their deed of trust to the First National Bank of Camden. This deed of trust to Thomas W. Hardy, trustee, was unsatisfied when the Tatums executed their deed of trust to appellant, Frank Phillips, on November 24, 1924. When the appellant therefore took his first mortgage from the Tatums he had constructive notice of the mortgage in favor of the minors. For this mortgage recited that Gathright Livingston was guardian. An inquiry of Livingston would have disclosed that he was the guardian of his minor children and that the money loaned the Tatums was the money of these minors. Appellant also had actual knowledge, at the time he took his mortgage from the Tatums, that the mortgage in favor of the minors had not been satisfied, for the trustee in that mortgage, Thomas W. Hardy, so informed him, and the appellant himself states that when he went to the bank to inquire about the purchase of the mortgage from the Tatums to the bank, he was shown a letter by an officer of the bank informing him that the mortgage in favor of the minors had not been satisfied. But, not-

withstanding this notice, both actual and constructive, of the mortgage in favor of the minors, and that same had not been satisfied, appellant, on the next day after he had been so informed, purchased the mortgage in favor of the bank. He testified that he purchased this mortgage upon the representations by Livingston and Louis Tatum that the mortgage of the Tatums in favor of the minors was clear, and he did not purchase the mortgage until Livingston had satisfied the mortgage of record. Livingston denied that he told the appellant that the Tatums had paid the debt due by them to him as guardian for the minors.

It could serve no useful purpose to further discuss the facts, which are set forth in detail above. We are thoroughly convinced that the chancery court was correct in finding that the appellant had actual notice, at the time he took his mortgage from the Tatums, and also at the time he purchased the mortgage of the Tatums to the bank, that the debt due by the Tatums to Gathright Livingston, as guardian for his minor children, had not been paid. Even if he did not have actual knowledge of such fact, he had notice of facts which were sufficient to put him upon inquiry, which inquiry, if pursued, would have revealed to him that the debt to the minors had not been paid, even though Livingston and Louis Tatum informed him to the contrary. The court was certainly justified in finding that the appellant, under the circumstances, was not an innocent holder of the mortgage of the Tatums to the bank. The chancery court was also fully justified in finding that the mortgage of the Tatums in favor of Gathright Livingston, guardian for the minors, in which Thomas W. Hardy was named trustee, was prior and paramount to the mortgages under which the appellant claims, and in entering its decree to that effect.

Certainly it cannot be said that the decree is clearly against a preponderance of the evidence. Therefore let the decree be affirmed.